25-1536, 25-1695

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FABIEN HO CHING MA, LAILA AMLANI, JONATHAN WILLIS,
MELISSA OLSON, SASHA SOLOMON, RYAN CROWLEY, GRAE KINDEL,
SARAH ROSEN, and ADAM TREITLER,

> *Petitioners-Appellants / Cross-Appellees*

---v.---

TWITTER, INC. and X CORP.,

> *Respondents- Appellees / Cross-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA.

_____

### PETITIONERS-APPELLANTS' OPENING BRIEF

_____

Shannon Liss-Riordan (SBN 310719)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

*Attorney for Petitioners-Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................... i

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ...............................................................................................1

STATEMENT OF JURISDICTION ...................................................................6

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ...........................12

PERTINENT LEGAL PROVISIONS..................................................................12

STATEMENT OF THE CASE............................................................................12

    A.    BACKGROUND................................................................................12

    B.    PROCEDURAL HISTORY ...............................................................18

SUMMARY OF ARGUMENT............................................................................22

STANDARD OF REVIEW .................................................................................25

ARGUMENT ......................................................................................................26

    A.    The Northern District of California Is the Appropriate Forum for Petitioners' Action to Compel Arbitration.........................................26

    B.    The District Court Did Not Have Discretion to Deny Petitioners' Motion to Compel Arbitration.............................................................29

    C.    The Purported Venue and Arbitrator Qualification Provisions in Twitter's Arbitration Agreement Are Not Obstacles to Compelling Arbitration in the Northern District of California...............................31

CONCLUSION....................................................................................................41

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS..............................43

i

ADDENDUM OF PERTINENT LEGAL PROVISIONS .......................................44

TABLE OF CONTENTS.................................................................45

ii

# TABLE OF AUTHORITIES

**Cases**

*Abernathy v. DoorDash, Inc.*,
438 F. Supp. 3d 1062 (N.D. Cal. 2020)...............................................................3

*Adler v. Twitter, Inc.*,
Case No. 3:23-cv-01788-JD (N.D. Cal) ............................................................14

*Aerojet-Gen. Corp. v. Am. Arb. Ass'n*,
478 F.2d 248 (9th Cir. 1973)............................................................................34

*Anonymous, M.D. v. Hendricks*,
994 N.E.2d 324 (Ind. Ct. App. 2013) ...............................................................40

*Assofi v. Basile*,
2025 WL 1090150 (C.D. Cal. Mar. 28, 2025)...................................................35

*Bauhinia Corp. v. China Nat. Mach. & Equip. Imp. & Exp. Corp.*,
819 F.2d 247 (9th Cir.1987)..............................................................................28

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
2012 WL 3757486 (N.D. Cal. 2012) .................................................................29

*Blair v. Rent-A-Ctr., Inc.*,
928 F.3d 819 (9th Cir. 2019).............................................................................10

*Boomer v. AT & T Corp.*,
309 F.3d 404 (7th Cir. 2002)...............................................................................8

*Borodaenko v. Twitter, Inc.*,
2023 WL 3294581 (N.D. Cal. May 5, 2023)......................................................14

*Borodaenko v. Twitter, Inc.*,
Case No. 3:22-cv-07226-AMO (N.D. Cal.) .......................................................13

*Boshears v. PeopleConnect, Inc.*,
    76 F.4th 858 (9th Cir. 2023) ...................................................................10, 11

*BP P.L.C. v. Mayor & City Council of Baltimore*,
    141 S. Ct. 1532 (2021).................................................................................10

*Chicago, M., St. P. & P. R. Co. v. Chicago & N. W. Transp. Co.*,
    263 N.W.2d 189 (Wis. 1978)......................................................................40

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000).................................................................5, 30

*Chun Ping Turng v. Guaranteed Rate, Inc.*,
    371 F. Supp. 3d 610 (N.D. Cal. 2018).......................................................39

*Coinbase, Inc. v. Bielski*,
    599 U.S. 736 (2023) .......................................................................................6

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976) .....................................................................................31

*Continental Grain Co. v. Dant & Russell*,
    118 F.2d 967 (9th Cir.1941)................................................................. 28, 29

*Cornet v. Twitter, Inc.*,
    2023 WL 187498 (N.D. Cal. Jan. 13, 2023).............................................14

*Cornet v. Twitter, Inc.*,
    Case No. 1:23-cv-441-CFC (D. Del.)........................................................13

*Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*,
    529 U.S. 193 (2000) .....................................................................................28

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) .................................................................................5, 30

*DeMidio v. REV Recreation Grp., Inc.*,
    2018 WL 1744958 (N.D. Ind. Apr. 10, 201 .............................................40

iv

*Doctor's Assocs., Inc. v. Casarotto*,
   517 U.S. 681 ................................................................................40

*Fed. Bureau of Investigation v. Fikre*,
   601 U.S. 234 (2024) ......................................................................31

*Ferguson v. City of Orofino*,
   953 P.2d 630 (Idaho App. 1998) ...................................................40

*Freedman v. Hason*,
   65 N.Y.S.3d 59 (N.Y. App. Div. 2d Dept. 2017) ..........................40

*Freeport-McMoRan, Inc. v. K N Energy, Inc.*,
   498 U.S. 426 (1991) ........................................................................7

*Gadala v. Twitter, Inc.*
   No. 3:23-cv-01595-JSC, (N.D. Cal. May 15, 2023), ECF No. 17 .......................14

*Hansen v. LMB Mortg. Servs., Inc.*,
   1 F.4th 667 (9th Cir. 2021) ........................................................8, 11

*Hill v. Rolleri*,
   615 F.2d 886 (9th Cir. 1980) ...........................................................7

*Homestake Lead Co. of Missouri v. Doe Run Res. Corp.*,
   282 F.Supp.2d 1131 (N.D.Cal.2003) ........................................ 28, 29

*Howard v. Ferrellgas Partners, L.P.*,
   748 F.3d 975 (10th Cir. 2014) ..........................................................6

*Idea Nuova, Inc. v. GM Licensing Grp., Inc.*,
   2010 WL 10041842 (S.D.N.Y. Oct. 18, 2010) ...............................35

*In re Cray,*
   871 F.3d 1355 .................................................................................36

*In re Sussex*,
   781 F.3d 1065 (9th Cir. 2015).....................................................5, 34

*Jones v. Starz Ent., LLC*,
129 F.4th 1176 (9th Cir. 2025)........................................................ 33, 34

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ...............................................................26

*Lang v. Skytap, Inc.*,
347 F. Supp. 3d 420 (N.D. Cal 2018) .....................................................39

*Marathon Entm't v. Blasi*,
174 P.3d 741 (Cal. Sup. Ct. 2008) ..........................................................40

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995) ..................................................................................37

*Matheny v. Gila Cnty.*,
710 P.2d 469 (Ariz. App. 2d Div. 1985) .................................................40

*Morris v. Morgan Stanley & Co.*,
942 F.2d 648 (9th Cir. 1991 ....................................................................34

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .....................................................................................6

*Portland Gen. Elec. Co.*,
862 F.3d 981 (9th Cir. 2017)...................................................................10

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017)...................................................... 39, 40, 41

*Regents of University of California v. Japan Science and Technology Agency*,
2014 WL 12690187 (C.D.Cal., 2014) .......................................................5

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) ..................................................................................39

*Republic of Nicaragua v. Standard Fruit Co.*,
937 F.2d 469 (9th Cir.1991).....................................................................30

*Rodriguez v. Twitter, Inc.*,
  2023 WL 3168321 (N.D. Cal. May 1, 2023) ......................................................... 14

*Sandvik AB v. Advent Int'l Corp.*,
  220 F.3d 99 (3d Cir. 2000) .............................................................................. 8

*Schobinger v. Twitter, Inc.*,
  Case No. 3:23-cv-03007-VC (N.D. Cal.) ............................................................. 14

*Schultz for Schultz v. GGNSC St. Paul Lake Ridge LLC*,
  310 F. Supp. 3d 985 (D. Minn. 2018) ................................................................ 40

*Seaman v. Private Placement Capital Notes II, LLC*
  2017 WL 1166336 (S.D. Cal. 2017) ................................................................... 29

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716  (9th Cir.1999) ........................................................................... 30

*Strifling v. Twitter, Inc.*,
  Case No. 4:22-cv-07739-JST (N.D. Cal.) ........................................................... 13

*SVAP III Poway Crossings, LLC v. Fitness Intern., LLC*,
  303 Cal. Rptr. 3d 863 (Cal. App. 4th Dist. 2023),
  *review denied* (Apr. 26, 2023) ...................................................................... 40

*Textile Unlimited, Inc. v. A..BMH & Co.*,
  240 F.3d 781 (9th Cir. 2001) ..................................................................... 28, 29

*Thompson v. Zavin,*
  607 F.Supp. 780 (C.D.Cal.1984) ..................................................................... 34

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv.*
  *Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*
  602 F.3d 1087 (9th Cir. 2010) .......................................................................... 7

*Vaden v. Discover Bank*,
  556 U.S. 49 (2009) ....................................................................................... 27

vii

*VoIP-Pal.com, Inc. v. Twitter, Inc.*,
  2018 WL 3543031 (D. Nev. July 23, 2018) .......................................................37

*Weinberg v. Twitter, Inc.*,
  4:23-cv-04016-DMR (N.D. Cal.) ..................................................................14

*X Corp. v. Adusei*,
  4:25-cv-02926 (N.D.Cal. 2025)......................................................................15

*X Corp. v. Bahr*,
  2:25-cv-02766 (C.D.Cal. 2025)......................................................................15

*Zeman v. Twitter, Inc.*,
  Case No. 3:23-cv-01786-SI (N.D. Cal.).............................................................14

## Statutes

28 U.S.C. § 1332 ........................................................................................7

29 U.S.C. §§ 2101-2109 ..............................................................................13

29 U.S.C. §§ 2601, *et seq*...........................................................................13

9 U.S.C. § 16................................................................................ 6, 7, 9, 10

9 U.S.C. § 2 ........................................................................................ 30, 39

9 U.S.C. § 4 ....................................................................................... passim

9 U.S.C. §§ 3 .................................................................................. 5, 10, 30

## Rules

Fed. R. App. P. 4(a)(1)(A)........................................................................11

viii

**INTRODUCTION**

Petitioners are former Twitter employees who have asserted legal claims against Respondents Twitter, Inc. (now called X Corp.) (collectively referred to herein as "Twitter") in relation to Twitter's failure to pay their promised severance upon their terminations, after Elon Musk purchased the company in 2022. Armed with standard arbitration agreements that are bolstered by class and collection action waivers — form agreements Twitter employees were required to sign and return in order to accept their job offers — Twitter has routinely and successfully blocked its former employees from pursuing their claims in court via motions to compel arbitration.

Recognizing that they have agreed to arbitrate their claims, Petitioners filed arbitration demands in accordance with Twitter's standard arbitration agreement, which Petitioners all signed, and they paid the requisite initial filing fee to the parties' agreed upon arbitration providers, Judicial Arbitration and Mediation Services ("JAMS") and the American Arbitration Association ("AAA"). Petitioners were not alone: More than 2,000 other former Twitter employees have filed individual arbitration demands to have their claims heard.

But faced with being held accountable by a lion's share of the roughly 80% of its workforce it terminated and the reality of having to arbitrate each matter individually pursuant to the agreement it drafted, and pay the requisite fees to

1

arbitrate, Twitter blanched. For the past several years, Twitter has been consistently fighting in courts to send claims to arbitration, but then in arbitration, in many case (including those of Petitioners) Twitter has refused to comply with its own agreement, the JAMS and AAA rules it agreed to, and the determinations by JAMS and AAA that it must pay most of the arbitration fees in order to allow the arbitral process to move forward.

Facing an increasing mountain of individual claims for which it must pay the bulk of the arbitration fees, Twitter soon decided to change course and block these arbitrations from moving forward, thus refusing to lie in the bed it has made. When ordered to pay arbitration fees (other than the claimants' initial filing fees) by both agreed upon arbitration providers, JAMS and AAA, Twitter did an about face and informed both JAMS and AAA that it would not proceed with the arbitrations (other than, initially, for employees who worked in California, Nevada, and Oregon — states in which it has now recently decided to stop paying the required fees as well). Twitter has also blocked arbitrations from proceeding that were brought by employees who worked in states where JAMS does not have an office or arbitrators, as well as by employees who do not have their own copy of their signed arbitration agreement (although Twitter does not dispute that it has copies of these signed agreements).

2

In short, despite compelling former employees to arbitrate their claims against the company, Twitter has taken every opportunity to prevent many of them from actually pursuing their claims in arbitration. This Court should not countenance this behavior and should remand the case and direct the District Court to enter an immediate order compelling Twitter to arbitrate — and to pay the fees it has been ordered to pay by JAMS and AAA, in order for those cases to proceed.

Judge William Alsup, recognizing the perversity of employers who try to game the system this way, entered a similar order not long ago when another defendant, who resisted class claims in court by compelling arbitration, refused to pay the arbitration fees when thousands of claimants filed arbitration demands. He explained:

> For decades, the employer-side bar and their employer clients have forced arbitration clauses upon workers, thus taking away their right to go to court, and forced class-action waivers upon them too, thus taking away their ability to join collectively to vindicate common rights. The employer-side bar has succeeded in the United States Supreme Court to sustain such provisions. The irony, in this case, is that the workers wish to enforce the very provisions forced on them by seeking, even if by the thousands, individual arbitrations, the remnant of procedural rights left to them. The employer here, DoorDash, faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. No doubt, DoorDash never expected that so many would actually seek arbitration. Instead, in irony upon irony, DoorDash now wishes to resort to a class-wide lawsuit, the very device it denied to the workers, to avoid its duty to arbitrate. This hypocrisy will not be blessed, at least by this order.

*Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067–68 (N.D. Cal. 2020).

3

Below, the District Court correctly found that Twitter was indeed responsible for paying the fees the arbitration provider, JAMS, apportioned to it; that the determination of how fees should be allocated was delegated by Twitter's arbitration agreement to JAMS in the first instance; that even were the fees not delegated, JAMS' interpretation of its own rules was correct; and that Twitter's refusal to pay these fees constitutes a refusal to arbitrate under 9 U.S.C. § 4 of the Federal Arbitration Act (FAA). The District Court even went on to conclude that it was the proper venue under the statute for Petitioners to bring their § 4 enforcement action under the statute's text and this Court's binding interpretations of the FAA.

The basis for this appeal, however, is that the District Court then went on to deny Petitioners' motion to compel arbitration, concluding that it did not itself have the power to compel arbitration because the Petitioners' arbitrations would need to take place outside that district. The District Court thus opined that Petitioners would need to each file separate § 4 petitions in their home districts because the arbitration agreement sets the situs of arbitrations as within 45 miles of where each Petitioner reported to work. Based on this conclusion, the District Court denied Petitioners' motion to compel arbitration. However, in so doing, the District Court improperly ignored the FAA's statutory command, which "leaves no place for the exercise of discretion by a district court, but instead mandates that

4

district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4). It further ignored this Court's longstanding instruction that "[i]f the court determines that the arbitration agreement is valid and 'encompasses the dispute at issue,' the Act requires the district court to enforce the agreement by ordering the parties to arbitrate their dispute." *In re Sussex*, 781 F.3d 1065, 1071 (9th Cir. 2015) (first quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000); then citing 9 U.S.C. § 4).

In short, the District Court lacked discretion to deny Petitioners' motion, having concluded that Twitter had refused to arbitrate in accordance with the parties' arbitration agreement and that determinations of fee allocations were properly delegated to arbitration. Instead, the District Court was required to grant Petitioners' motion and compel Twitter to abide by its arbitration agreement. **The question of where the arbitration itself would be held is a question that could be decided in arbitration but was not a proper basis for the District Court to deny Petitioners' petition to compel arbitration**.[1]

---

[1] Indeed, the question of where the arbitration should be held is open to determination in arbitration. *See, e.g.*, *Regents of University of California v. Japan Science and Technology Agency*, 2014 WL 12690187, at *5–6 (C.D.Cal., 2014). But, given that the majority of the arbitrations already conducted against Twitter

5

Thus, Petitioners respectfully ask that the Court promptly consider this appeal and expeditiously order the District Court to compel Twitter to arbitrate as it has agreed to do (including by paying the fees required of it for these arbitrations to proceed).[2]

## STATEMENT OF JURISDICTION[3]

The District Court had subject matter jurisdiction over Petitioners' claims pursuant to Section 4 of the Federal Arbitration Act (FAA), which provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the

---

have been remotely by zoom, their physical situs is really beside the point — and should not have been a basis for the District Court to deny the Petition below.

[2] *See, e.g.*, *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 747 (2023) ("[W]e anticipate that the Ninth Circuit here, as we anticipate in § 16(a) appeals more generally, will proceed with appropriate expedition when considering [Petitioners'] interlocutory appeal from the denial of the motion to compel arbitration."); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) ("Congress's clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."); *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) (Gorsuch, J.) ("The FAA tells district courts to "proceed summarily to the trial" of the relevant facts. 9 U.S.C. § 4….The object is always to decide quickly—summarily—the proper venue for the case, whether it be the courtroom or the conference room, so the parties can get on with the merits of their dispute.").

[3] Petitioners note the Court's directive that "the parties must address whether this court has jurisdiction over these appeals." Dkt. 10 (citing 9 U.S.C. § 16).

6

> parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. Here, the District Court for the Northern District of California had jurisdiction over this petition as the underlying matters in controversy, as originally filed, collectively exceeded the sum or value of $5,000,000, exclusive of interest and costs, and the vast majority of Petitioners resided in a different state from Respondents at the time the action was filed. *See* 28 U.S.C. § 1332.[4]

This Court has appellate jurisdiction pursuant to 9 U.S.C. § 16(1)(B), which vests this Court with appellate jurisdiction over appeals "taken from…an order… denying a petition under section 4 of this title to order arbitration to proceed." As this Court has explained, "On its face, this language gives us jurisdiction over any order denying a motion to compel arbitration; it does not differentiate between

---

[4]     This action was originally filed a class action, so the CAFA rules under 28 U.S.C.A. § 1332(d) apply, notwithstanding that class certification was ultimately denied. *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090–92 (9th Cir. 2010).

At the time this action was filed, Respondent Twitter, Inc. was a Delaware corporation headquartered in San Francisco, California, and Respondent X Corp. was a Nevada corporation also headquartered in San Francisco, California.

Respondents' headquarters were within the Northern District of California at the time Petitioners filed this action. While X Corp. subsequently moved its corporate headquarters to Texas, "diversity jurisdiction is to be assessed at the time the lawsuit is commenced." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 429 (1991); *accord Hill v. Rolleri*, 615 F.2d 886, 889 (9th Cir. 1980) ("The general rule in diversity cases is that if the jurisdictional requisites are present when the action begins, subsequent events will not ordinarily defeat the district court's jurisdiction.").

final and nonfinal orders." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 671–72 (9th Cir. 2021). Thus, the "denial of a motion to compel arbitration is immediately appealable even if the district court 'intended to reconsider the question of arbitrability following further fact-finding and possibly a trial,'" and § 16(a)(1)(B) "'treat[s] all orders declining to compel arbitration as reviewable.'" *Id.* (first quoting *Boomer v. AT & T Corp.*, 309 F.3d 404, 412 (7th Cir. 2002); then quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 103 (3d Cir. 2000)).

Here, the District Court unambiguously "den[ied] the individual Petitioners' motion to compel arbitration." ER_002. Despite explaining "that arbitration should be compelled as to all remaining [named] Petitioners," the District Court nevertheless held that "Petitioners' motion to compel arbitration is denied" in its entirety, and that "the Court will not enter an order compelling arbitration" because the Petitioners each resided outside of the District.[5] ER_021.

Despite denying Petitioners' motion to compel arbitration, the District Court nevertheless stayed this action — first as to Petitioners Ma, Crowley, and Treitler "so that they may pursue an order compelling arbitration in the appropriate venue,"

---

[5] As discussed in greater detail *infra*, the District Court (erroneously) denied Petitioners' motion to compel arbitration because, it reasoned, "the Court may only compel arbitration within this district" but "[s]uch a result would contravene the parties' agreement that the arbitration occur 'no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.'" ER_014–15.

8

ER_021, and then in short order as to the remaining Petitioners such that "the case is now stayed as to all Petitioners so that they can seek relief in an appropriate venue," ER_059–60. However, this stay does not affect this Court's jurisdiction to review the District Court's denial of Petitioners' petition and motion to compel arbitration pursuant to 9 U.S.C. § 16.

First, while the statute does *not* allow for appeals "taken from an interlocutory order…granting a stay of any action under section 3" of the FAA, this provision is not implicated here. 9 U.S.C. § 16(b)(1).[6] The District Court's stay was not issued pursuant to Section 3; rather, "the Court exercise[d] its discretion to stay proceedings…so that [Petitioners] may move to compel arbitration in a venue where 'the terms of the agreement' can be enforced by compelling arbitration in the agreed forum." ER_016 (quoting 9 U.S.C. § 4). In contrast, a stay under Section 3 is only available "on application of one of the parties… providing the

---

[6] Section 3, in turn, provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

9

applicant for the stay is not in default in proceeding with such arbitration," and only "stay[s] the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. Here, no party requested such a stay, and the District Court did not purport to grant any such a stay; instead, the court *sua sponte* granted a discretionary stay. "A discretionary stay is based on the district court's inherent authority to manage its docket and is not 'a stay under section 3 of the FAA.'" *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 832 (9th Cir. 2019) (citing *Portland Gen. Elec. Co.*, 862 F.3d 981, 984 (9th Cir. 2017)) (alteration omitted).

Second, even were this Court to consider the District Court's stay to somehow constitute a stay under Section 3 of the FAA, this stay order would still not destroy appellate jurisdiction over the District Court's order denying Petitioners' motion to compel arbitration. As this Court has explained, even when a District Court denies a motion compelling arbitration and simultaneously issues another order in the same document, "[t]hese are separate 'written directions or commands'" and "are thus different 'orders' that merely happen to appear in the same document." *Boshears v. PeopleConnect, Inc.*, 76 F.4th 858, 861 (9th Cir. 2023) (alterations omitted) (quoting *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1537 (2021)). Thus, "Section 16(a) allows [the Ninth Circuit] to review the first issue raised on appeal—whether the district court

10

correctly denied [the] motion to compel arbitration" even though the Court otherwise "lack[s] jurisdiction to review" the stays ordered within the same document.[7] *Boshears*, 76 F.4th at 860–62.[8]

Thus, even if the District Court's denial of Petitioners' motion to compel arbitration "was merely for docket management purposes….[and] was premature and nonfinal, … [the Ninth Circuit] ha[s] jurisdiction over the district court's order…..[because] § 16 provides jurisdiction over all orders denying a motion to compel arbitration, even if they are nonfinal and the district court has reserved ruling on the merits." *Hansen*, 1 F.4th at 671–72.

The District Court entered its order denying Petitioners' motion to compel arbitration on February 7, 2025. ER_022. Petitioners filed a timely Notice of Appeal on March 5, 2025. ER_911–14. This appeal is timely pursuant to Fed. R. App. P. 4(a)(1)(A).

---

[7]     *Id.* at 860–62; *see also Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 824–832 (9th Cir. 2019) (holding, when reviewing the district court's denial of motion to compel arbitration and denial of request for discretionary stay contained in the same document, that the Ninth Circuit "ha[s] appellate jurisdiction under 9 U.S.C. § 16(a)(1)(C), which allows an interlocutory appeal of a district court's denial of a motion to compel arbitration," to review that order, but "lack[s] jurisdiction to review the district court's denial of a discretionary stay" simultaneously issued).

[8]     In any event, once Petitioners "appealed from the denial of its motion to compel arbitration, the District Court was required to stay its proceedings" pursuant to the FAA. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 747 (2023).

11

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Whether, after having recognized that arbitration should be compelled, the District Court erred by nevertheless declining to compel arbitration because it believed it lacked authority to compel arbitration for these Petitioners because their arbitrations may need to be conducted in other districts.

## PERTINENT LEGAL PROVISIONS

The legal authorities pertinent to this appeal are set out verbatim in the Addendum filed with this brief.

## STATEMENT OF THE CASE

### A.    BACKGROUND

Since at least 2017, Twitter has included arbitration clauses in its standard employment agreements with employees throughout the United States, including the Petitioners in this action. ER_519; ER_551; ER_558. The arbitration agreement requires the parties to arbitrate:

> any dispute arising out of or related to Employee's employment…or termination of employment,….without limitation, disputes arising out of or relating to interpretation or application of this Agreement….disputes regarding the employment relationship, [or] terms and conditions of employment…. disputes that otherwise would be resolved in a court of law or before a forum other than arbitration…., and any disputes [ ] that regard [fee apportionment].

12

ER_715–48. Twitter's standard arbitration agreement for at least the past several years directs that any such arbitration be brought with the arbitration provider JAMS, pursuant to the then-current JAMS Employment Arbitration Rules and Procedures. *Id.* Earlier versions of the agreement did not specify an arbitration provider, so Petitioners' counsel and Twitter agreed to have such arbitration administered by AAA.[9]

Since Elon Musk's acquisition of Twitter in October 2022, the company has been accused of a variety of unlawful acts, including failing to pay laid off employees promised severance payments, discriminating against employees on the basis of sex, race, age, and disability, failing to pay promised bonuses, violating the WARN Act and FMLA, and other violations. A number of employees filed class action cases in court challenging these violations. *See e.g.*, *Cornet v. Twitter, Inc.*, Case No. 1:23-cv-441-CFC (D. Del.); *Borodaenko v. Twitter, Inc.*, Case No. 3:22-cv-07226-AMO (N.D. Cal.); *Strifling v. Twitter, Inc.*, Case No. 4:22-cv-07739-JST (N.D. Cal.); *Adler v. Twitter, Inc.*, Case No. 3:23-cv-01788-JD (N.D.

---

[9]    *Id.*; ER_835–38; ER_669. For those employees, Twitter and Petitioners' counsel agreed to have the arbitrations administered by another arbitration provider, AAA. Petitioners Kindel and Rosen were bound by such agreements, but given that Twitter subsequently allowed their claims to move forward in arbitration by paying the requisite fees, only the JAMS agreements are at issue in this appeal. *See* ER_002–03 (quotations and citations omitted) (District Court's order noting Twitter "has allowed the claims of Lenna (Grae) Kindel, Sarah Rosen, and Sasha Solomon to move forward. This leaves the individual claims of Ma, Amlani, Willis, Olson, Crowley, and Treitler remaining for resolution.").

13

Cal); *Zeman v. Twitter, Inc.*, Case No. 3:23-cv-01786-SI (N.D. Cal.); *Schobinger v. Twitter, Inc.*, Case No. 3:23-cv-03007-VC (N.D. Cal.); *Weinberg v. Twitter, Inc.*, 4:23-cv-04016-DMR (N.D. Cal.). However, any time an employee bound by an arbitration agreement has brought a claim in court, Twitter has moved to compel that employee's claim to arbitration, and Twitter has been successful in those motions. *See, e.g.*, *Cornet v. Twitter, Inc.*, 2023 WL 187498 (N.D. Cal. Jan. 13, 2023); *Rodriguez v. Twitter, Inc.*, 2023 WL 3168321 (N.D. Cal. May 1, 2023); *Gadala v. Twitter, Inc.*, No. 3:23-cv-01595-JSC (N.D. Cal. May 15, 2023), ECF No. 17 (Stipulation to Dismiss Class Claims, Arbitrate Plaintiff's Individual Claims and Stay Action); *Borodaenko v. Twitter, Inc.*, 2023 WL 3294581 (N.D. Cal. May 5, 2023).

After Twitter succeeded in moving to compel its employees' claims to arbitration, more than 2,000 of Twitter's former employees attempted to pursue arbitration claims against it. ER_551. When those arbitration demands were filed, both JAMS and AAA informed Twitter that it would be responsible for paying the full arbitration fees (other than initial filing fees for which the claimants were responsible).[10] Twitter refused to pay the full arbitration fees for all employees

---

[10] ER_666–70; ER_890; ER_840. At the outset of each JAMS arbitration, JAMS notified the parties that JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Minimum Standards") would apply, which requires the employer to pay full arbitration fees, other than an initial filing fee. ER_890. Likewise, AAA also determined under its rules that Twitter would be

who worked outside California (and a couple other states, including Nevada and Oregon) — it has subsequently refused to pay these fees as well.[11]

Twitter did not initially object to the application of the JAMS Minimum Standards. ER_668–69. Rather, it filed responses to employees' arbitration demands and began paying its share of the fees. *Id.* However, on June 2, 2023, Twitter changed course and objected to the JAMS Minimum Standards. *Id.*; ER_890; ER_456–58. It sent a letter to JAMS' Senior Vice President, General Counsel, Sheri Eisner, requesting that JAMS' fees be shared equally by the parties for arbitrations outside California, Nevada, or Oregon. ER_890; ER_456. Ms. Eisner responded on June 21, 2023, denying Twitter's request and confirming that the JAMS Minimum Standards would apply to all of these cases and that Twitter was responsible for the full arbitration fees. ER_890–91. On June 28, 2023, Twitter informed JAMS that it would nevertheless not pay the full fees in those

---

required to pay all arbitration fees (other than an initial fee which was apportioned to the employees). ER_840.

[11]     Despite representing to the District Court below that "Twitter has never objected to paying the arbitral fees as required by JAMS and AAA for California, Nevada, and Oregon because **Twitter is obligated to make those payments under the DRA**," ER_500, Twitter has now subsequently refused to make payments for arbitrations in these states as well, *see X Corp. v. Adusei*, 4:25-cv-02926 (N.D.Cal. 2025); *X Corp. v. Bahr*, 2:25-cv-02766 (C.D.Cal. 2025); *X Corp v. McGrath*, 3:25-cv-00748 (S.D.Cal. 2025).

cases. ER_893–94.[12]

Thus, based on Twitter's refusal to pay the arbitration fees it was ordered to pay, these arbitration cases are not proceeding.[13]

Twitter has also employed other tactics to block former employees from arbitrating their claims against the company. For example, in addition to refusing to pay its share of the arbitration fees as required by JAMS and AAA, Twitter has refused to proceed with arbitrations for employees who worked in a number of states where JAMS does not have an office or sufficient arbitrators to preside over the cases. ER_003; ER_553; *see also* ER_861. While such employees, including

---

[12] Twitter likewise informed AAA, Petitioners, and others similarly situated individuals that it would not proceed with arbitrations filed with the AAA outside California, Nevada, and Oregon, because it refused to pay the full arbitration fees for these cases. ER_893–94. On August 1, 2023, Twitter sent an email to AAA identifying at least 130 individuals who had worked outside these states, for whom it would not pay arbitration fees. ER_844–47.

[13] JAMS has stayed all pending arbitrations outside of California, Nevada, and Oregon (hundreds of arbitrations). ER_669; ER_820; ER_005. Consequently, dozens of initial case management conferences that were previously scheduled were cancelled. ER_669. Petitioner Ma, who worked for Twitter in New York, had an arbitration hearing scheduled for December 2023, but Twitter declined to proceed with his case. *Id.*; *see also* ER_652–60.
Although AAA agreed to appoint arbitrators in a small group of initial cases outside California, it has stated that these arbitrations will not move forward unless Twitter pays the required arbitrator retainers, which Twitter has refused to do. ER_669–70; ER_675–76; ER_840–41; *see also* ER_844–47; ER_849. These arbitrations are therefore likewise currently administratively stayed before AAA. ER_669–70.

Petitioners Amlani, Willis, Olson, who worked in Arizona, Idaho, Wisconsin, proposed using arbitrators from nearby states, Twitter refused to agree to the appointment of any arbitrators in these and many other cases.[14] Thus, Twitter has refused to move forward with these Petitioners' arbitration cases, as well as those of many other employees in the same situation.

Twitter has also blocked arbitration cases from proceeding in which the employee does not have a copy of their signed arbitration agreement. ER_551–53; ER_857; ER_851–55; ER_012. Petitioner Crowley could not find a signed copy of his arbitration agreement, despite all parties agreeing he signed Twitter's standard arbitration agreement. ER_021; ER_673. Nevertheless, Twitter refused to proceed with Petitioner Crowley's arbitration because he could not produce a signed copy of his agreement. ER_021; ER_673; *see also* ER_857. Even though Twitter has moved to compel arbitration for employees who brought claims in court (and attached the signed agreements to its motions to compel), it has refused to proceed with other arbitrations unless the employees themselves have a copy of their signed

---

[14]    Petitioner Solomon, who worked remotely from Oregon, was originally in the same boat, but Twitter subsequently allowed her arbitration to move forward. ER_002–03. Twitter agreed to use out-of-state arbitrators for some states, such as New York arbitrators for New Jersey employees, but refused to agree to use out-of-state arbitrators in a number of states, including Arizona, Idaho, Wisconsin, and originally Oregon, where Petitioners Amlani, Willis, Olson, and Solomon worked. ER_553; *see also* ER_861.

17

arbitration agreement. ER_551–53; ER_851–55; ER_857. In order to begin the arbitrations, JAMS has required a signed arbitration agreement for each employee who has brought a claim. ER_857. For those employees who do not have their own signed copy, Petitioners' counsel requested that Twitter provide them, so that these cases may proceed, but Twitter has refused to do so, preventing these arbitrations from moving forward. ER_851–55; ER_551–52.

## B.    PROCEDURAL HISTORY

After each filing arbitration demands, and after Twitter refused to abide by the arbitration providers' order apportioning the majority of the arbitration fees to Twitter, Petitioners' arbitrations were unable to move forward.[15] Accordingly, on July 3, 2023, Petitioners filed a Petition to Compel Arbitration in the Northern District of California. ER_863–71; ER_923. Petitioners then filed an Amended Petition on August 31, 2023, and a Motion to Compel Arbitration and for a Preliminary Injunction on the same day. ER_697–712; ER_626–50; ER_924. Petitioners simultaneously filed a motion to expedite the hearing date, citing the summary nature of § 4 proceedings, which was denied on September 5, 2023. ER_617–20; ER_616; ER_924.

---

[15]    As the District Court noted, Twitter subsequently allowed arbitrations for Petitioners Kindel, Rosen, and Solomon to move forward, so their claims are not at issue in this appeal. ER_002–03.

18

The District Court later declined to rule on Petitioners' motion to compel arbitration until after deciding class certification. ER_279–85. After denying class certification,[16] the Court proceeded to rule on the motion to compel arbitration. The District Court determined that arbitration should be compelled (and that JAMS and AAA's determinations that Twitter must pay the majority of the arbitration fees should be followed), but it denied Petitioners' motion on the ground that it believed it did not have authority to order arbitration outside its own district and the arbitration agreement required arbitrations to be held in the district where each Petitioner worked for Twitter. ER_02–22.

The court then separately issued orders staying the case as to three Petitioners (Ma, Trietler, and Crowley), who lived in states with JAMS offices so that they could pursue an order compelling arbitration from a district court in their home jurisdiction, and it ordered the parties to meet and confer as to further proceedings regarding the remaining three Petitioners (Amlani, Willis, and Olson), who lived in states believed to have no JAMS arbitrators. *Id.*

---

[16] The District Court denied the motion for class certification on the ground that some putative class members may seek to pursue their claims in court, based on Twitter's breach of the arbitration agreement. ER_199–204. Petitioners believe that was an improper ground for denying class certification (since having the right to go to arbitration did not require employees to go to arbitration). However, Petitioners have not sought an interlocutory review of that order, though they may appeal that order if needed at a later stage.

The District Court explained that, for Petitioner Crowley, the court was satisfied that he was subject to the arbitration agreement given that both sides agree he signed an arbitration agreement and neither side argued that he opted out of the agreement. ER_020–21. The court nevertheless went on to explain that Ma, Treitler, and Crowley all worked for Twitter at locations more than 45 miles away from its district, so it declined to compel arbitration as to these Petitioners. ER_007–16; ER_019–21. Instead, it stayed the case as to Petitioners Ma, Treitler, and Crowley so that they could each "seek an order compelling arbitration from the appropriate court." ER_021; ER_016.

For Amlani, Willis, and Olson, the District Court explained its understanding that they:

> worked for Twitter in locations where JAMS does not have any providers who meet the requirements of Section 3 of the DRA. That section provides that, unless the parties agree in writing otherwise, arbitration proceedings shall be held "no more than 45 miles from the place where the Employee reported to work for the Company," and "the Arbitrator shall be an attorney licensed to practice in the state in which the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the state where the arbitration will be conducted." ECF No. 6-1 at 4. It is uncontested that the arbitration cannot both be conducted by JAMS, as required by Section 5 of the DRA, *id.*, and satisfy the licensing requirements of Section 3.

ER_017. The District Court therefore ordered the parties to meet and confer on how to proceed with respect to Petitioners Amlani, Willis, and Olsen. ER_019; ER_022. The court ordered the parties to discuss:

20

whether they can agree on arbitrators to conduct those proceedings; if not, whether this Court has the authority to appoint arbitrators outside this district and, if so, how the Court should choose whom to appoint; and whether the parties wish to stay this case as to Amlani, Willis, and Olson so that they, like Ma and Treitler, can seek to enforce their arbitration rights in a different venue.

ER_019. After conferring, the parties filed a Joint Status Report on February 28, 2025. ER_061–64. In this report, consistent with the court's instructions, Petitioners explained that JAMS arbitrators were indeed available in Arizona for Petitioner Amlani, and they outlined other possible proposals for conducting arbitrations within 45 miles of where Petitioners Willis and Olson lived. ER_062–63. However, Twitter maintained that it would not abide by JAMS' determination to require Twitter to pay the majority of arbitration fees for any of these matters; that if non-JAMS arbitrators were used, JAMS rules (including those related to fees) would not apply; and that, in any event, the court did "not have the authority, under Section 4 of the FAA, to enter an order compelling arbitration in any jurisdiction other than the Northern District of California." ER_063.

On March 5, 2025, the District Court issued an order staying the case as to the three remaining Petitioners — Amlani, Willis, and Olson — writing that it was doing so to allow them to pursue an order compelling arbitration in other districts (or, in jurisdictions where there are not a sufficient number of qualified JAMS arbitrators, appointment of an arbitrator under 9 U.S.C. § 5). ER_059–60.

21

That same day, on March 5, 2025, Petitioners filed a timely Notice of Appeal to this Court from the District Court's order denying Petitioners' Motion to Compel Arbitration entered on March 7, 2025. ER_911–14; ER_933–34. On March 10, 2025, this Court issued a Docketing Notice and Time Scheduling Order, which designated Petitioners' appeal as case number 25-1536. ER_055–58.[17]

## SUMMARY OF ARGUMENT

This Court should reverse the District Court's order denying Petitioners' Motion to Compel Arbitration. The District Court correctly recognized that Twitter has refused to arbitrate in accordance with the parties' agreement by refusing to pay the fees it was ordered to pay in arbitration in order to allow Petitioners to move forward with their claims.[18]  The District Court also correctly concluded that the FAA permits Petitioners to bring this § 4 action within the Northern District of California.

However, the District Court erred by nevertheless denying Petitioners' Motion to Compel Arbitration, reasoning that despite the FAA's text clearly allowing Petitioners to bring these § 4 proceedings in the Northern District of

---

[17]    Twitter later filed a Notice of Cross-Appeal. ER_028–29. Petitioners do not believe that Twitter has standing to appeal the District Court's order, which was in Twitter's favor, as it denied Petitioners' motion to compel arbitration.

[18]    Twitter's arbitration agreement clearly delegates the determination regarding the payment of fees to arbitration.

California where Twitter was headquartered, and despite Twitter clearly refusing to arbitrate in accordance with the parties' agreements, the Court could not compel arbitration because Petitioners worked outside the Court's district and thus Petitioners would have to file separate actions in the districts in which they worked in order to compel arbitration.

This result was incorrect. The District Court's obligation was simply to compel arbitration. The question of *where* the arbitrations would be held is a matter that could be addressed in arbitration. The District Court's reading of the arbitration agreement, stating that arbitrations were to take place in the location where the Petitioner worked, should not have interfered in any way with the District Court simply compelling arbitration and letting venue issues (if any existed) be determined in arbitration.[19]

Because both the Supreme Court and this Court have made clear that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on

---

[19]    As noted, most arbitrations against Twitter have taken place via zoom, and so the location of the arbitration is really beside the point. In any event, if there were a disagreement among the parties as to where an arbitration should be held, that is a matter to be decided in arbitration. It was not a limiting factor on the District Court's power to compel arbitration.

23

issues as to which an arbitration agreement has been signed,"[20] and that "[i]f the court determines that the arbitration agreement is valid and 'encompasses the dispute at issue,' the Act requires the district court to enforce the agreement by ordering the parties to arbitrate their dispute,"[21] the District Court lacked discretion to do anything other than order the parties to arbitration.

To the extent any concerns about the proper arbitral venue for the JAMS proceedings persist, those are expressly contemplated by the parties' agreement and must be resolved in arbitration. After being compelled to arbitrate with JAMS in the Northern District of California, Twitter is free to avail itself of the parties' agreed-to JAMS procedures, which allow for challenges to the location of proceedings and the appointment of arbitrators. Regardless, it is not at all clear that Twitter's arguments about how to interpret these provisions will win the day — and these questions are themselves delegated to arbitration. And, at bottom, if these provisions make performance of the contract impossible, they could be severed. But what Twitter cannot do is obstruct arbitration and deny Petitioners the ability to compel arbitration that Congress explicitly provided for in the FAA.

---

[20] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4).

[21] *In re Sussex*, 781 F.3d 1065, 1071 (9th Cir. 2015) (first quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000); then citing 9 U.S.C. § 4).

By denying Petitioners' motion to compel arbitration, the District Court allowed a multiplying of proceedings in court, as well as delay of the arbitration proceedings, which goes against the entire purpose of arbitration, which is to provide a speedy, efficient method of dispute resolution.[22]

## **STANDARD OF REVIEW**

This Court "review[s] an order denying a motion to compel arbitration de novo, questions of arbitrability 'with a healthy regard for the federal policy favoring arbitration,' and any underlying factual findings for clear error. *Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 830 (9th Cir. 2022) (citing *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1093 (9th Cir. 2018)); *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1153 (9th Cir. 2025). "The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a

---

[22]    As a result of the District Court's decision, Respondents' counsel (in addition to filing this appeal) has also filed motions to compel arbitration in courts across the country (but not for the named Petitioners in this case).  This multiplicity of court proceedings is simply unnecessarily clogging the dockets of district courts and delaying arbitration. Moreover, Twitter is taking this opportunity to try to complicate those proceedings — rather than recognize that arbitration should simply be compelled (as the District Court below appeared to envision would happen), Twitter is using gamesmanship to try to persuade other district courts not to follow JAMS' determinations on fee allocation and ignore the District Court order below that Twitter would have to pay arbitration fees pursuant to JAMS' ruling. *See, e.g.*, Draft Mot. Hr'g Tr., *Braunstein, et al. v. X Corp., et al.*, No. 1:25-cv-10733-PBS (D. Mass. July 21, 2025) (attached as Exhibit 1 to Petitioners-Appellants' Motion Requesting Judicial Notice).

25

preponderance of evidence." *Id.* (citing *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024)).

## **ARGUMENT**

**A.** **The Northern District of California Is the Appropriate Forum for Petitioners' Action to Compel Arbitration**

First, the District Court correctly determined that it had jurisdiction over Petitioners' claim. The FAA states, unambiguously:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration **may petition any United States district court which, save for such agreement, would have jurisdiction under title 28**, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement….The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4 (emphasis added). In other words, a petition to compel arbitration is properly brought in any federal district court that otherwise has jurisdiction over the underlying claims, notwithstanding any venue provisions in the arbitration agreements themselves. The Supreme Court has further explained:

> The text of § 4 drives our conclusion that a federal court should determine its jurisdiction by "looking through" a § 4 petition to the parties' underlying substantive controversy. We reiterate § 4's relevant instruction: When one party seeks arbitration pursuant to a written agreement and the other resists, the proponent of arbitration may

26

petition for an order compelling arbitration in "any United States district court which, save for [the arbitration] agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4. The phrase "save for [the arbitration] agreement" indicates that **the district court should assume the absence of the arbitration agreement and determine whether it "would have jurisdiction under title 28" without it**.

*Vaden v. Discover Bank*, 556 U.S. 49, 62–63 (2009) (emphasis added) (alterations in original). Here, there is no doubt that the District Court would have jurisdiction over this dispute absent the arbitration agreement, as diversity jurisdiction was satisfied. *See supra* at p. 7.

However, the District Court lamented that, in its view, the arbitration agreement required arbitration to occur within 45 miles of each Petitioner's work location, and explained its view that it could not grant the petition to compel arbitration because the FAA constricts a district court to compelling arbitration solely "within the district in which the petition for an order directing such arbitration is filed," 9 U.S.C. § 4. But this is a phenomenon that the Ninth Circuit has already squarely addressed, holding that the venue selection provisions within an arbitration agreement must subside to the plain text of the FAA:

> First, on its face, § 4 provides that venue is proper for an action to compel arbitration in "any United States district court which, save for such agreement, would have jurisdiction under Title 28." That clear expression should end the argument. However, A..BMH asserts that venue any place other than the place of arbitration contractually specified is precluded by the § 4 provision that "[t]he hearing and proceedings, under such agreement, shall be within the district in

27

which the petition for an order directing such arbitration is filed." However, this interpretation skirts the section's plain language: **by its terms, § 4 only confines the *arbitration* to the district in which the petition to compel is filed. It does not require that the petition be filed where the contract specified that arbitration should occur.** *See Continental Grain Co. v. Dant & Russell,* 118 F.2d 967, 969 (9th Cir.1941).

*Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 785 (9th Cir. 2001)

(emphasis added); *cf. Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S.

193, 200 (2000) ("The enactment of the special venue provisions in the FAA thus

had an obviously liberalizing effect, undiminished by any suggestion, textual or

otherwise, that Congress meant simultaneously to foreclose a suit where the

defendant resided.").

As several district courts in the Ninth Circuit have explained:

[T]he court lacks discretion to do anything other than order arbitration to proceed according to its terms. One term, however, may be disregarded: under Ninth Circuit precedent, § 4 "confines the arbitration to the district in which the petition to compel is filed." *Textile Unlimited, Inc. v. A..BMH and Co.,* Inc., 240 F.3d 781, 785 (9th Cir.2001) (emphasis omitted); *see also Cont'l Grain Co. v. Dant & Russell,* 118 F.2d 967, 969 (9th Cir.1941). That is, the Ninth Circuit's interpretation of the FAA's remedial provision, set forth in *Continental Grain,* "prohibits a district court from ordering parties to arbitrate outside of the district in which a motion to compel is filed." This is true when the arbitration agreement is silent as to venue; it is true even when the arbitration agreement specifies a venue. *See Bauhinia Corp. v. China Nat. Mach. & Equip. Imp. & Exp. Corp.,* 819 F.2d 247, 250 (9th Cir.1987) (silent as to venue); *Homestake Lead Co. of Missouri v. Doe Run Res. Corp.*, 282 F.Supp.2d 1131, 1143–44 (N.D.Cal.2003) (specifying venue).... The Ninth Circuit has explained that § 4 does not require a party to file a petition to compel arbitration in the place "where the contract specified that arbitration

28

should occur." *Textile Unlimited,* 240 F.3d at 785 (citing *Continental Grain,* 118 F.2d at 969)….Irrespective of this Court's view of the wisdom of the *Continental Grain* rule, it remains the law of this circuit until modified by Congress or some superior court.

*Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2012 WL 3757486, at *5–6 (N.D. Cal. 2012) (citations and quotations omitted); *accord, e.g.*, *Seaman v. Private Placement Capital Notes II, LLC*, 2017 WL 1166336, at *5–6 (S.D. Cal. 2017) (explaining *Textiles Unlimited* "remains controlling authority in this Circuit….Accordingly, the Court grants Defendants' motion to compel arbitration, but will require arbitration proceedings to be initiated in the Southern District of California."); *Homestake Lead Co. of Mo. v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1143–44 (N.D. Cal. 2003) (similar).

As a result, under the plain text of the FAA and this Court's longstanding precedents, the Northern District of California was a proper venue for Petitioners to bring their petition to compel arbitration.[23]

**B.     The District Court Did Not Have Discretion to Deny Petitioners' Motion to Compel Arbitration**

The District Court engaged in a thorough and well-supported analysis to determine that Twitter must pay the arbitration fees apportioned to it by the

---

[23]     The suggestion that Petitioners should have brought separate proceedings in district courts across the country is not only foreign to these venue provisions of the FAA; it also ignores the reality that such duplicative litigation would undercut the intent of Section 4 — to speedily enforce arbitration agreements.

29

parties' agreements and as ordered by JAMS, and that Twitter's refusal to pay these fees constituted a refusal to arbitrate pursuant to Section 4 of the FAA. Having determined that the apportionment of fees was an issue delegated to arbitration, and that Twitter was refusing to arbitrate, the District Court erred by not ordering Twitter to arbitrate in accordance with its agreement.

As the Supreme Court has made crystal clear:

The Arbitration Act provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. §§ 3, 4. Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

*Byrd*, 470 U.S. at 218 (emphasis in original). Likewise, this Court has been resolute:

The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *See* 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 719–20 (9th Cir.1999); *see also Republic of Nicaragua v. Standard Fruit Co.,* 937 F.2d 469, 477–78 (9th Cir.1991). ***If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms.***

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (emphasis added); *see generally Fed. Bureau of Investigation v. Fikre*, 601 U.S.

30

234, 240 (2024) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)) ("A court with jurisdiction has a 'virtually unflagging obligation' to hear and resolve questions properly before it.").

Here, the District Court's determination that the arbitration agreement delegated the fee dispute and that Twitter's refusal to abide by its obligations to pay the fees required of it to commence these arbitrations should have ended the inquiry. Because Twitter has refused to arbitrate in accordance with the parties' arbitration agreement, the District Court was statutorily required pursuant to 9 U.S.C. § 4 to grant Petitioners' motion to compel arbitration and order Twitter to abide by the terms of its agreement (including following JAMS' order, which was delegated to it, that Twitter would have to pay the arbitration fees).

**C.     The Purported Venue and Arbitrator Qualification Provisions in Twitter's Arbitration Agreement Are Not Obstacles to Compelling Arbitration in the Northern District of California**

Finally, to the extent the Court has any remaining concerns about ordering Twitter to arbitrate in the Northern District of California, such concerns should be assuaged by turning to the procedures agreed to by the parties — namely, their delegation of these issues and incorporation of JAMS Rules which provide remedies for moving the proceedings or challenging the appointment of an arbitrator.

31

The agreement states:

> The Arbitrator shall be selected by mutual agreement of the Company and the Employee. Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the state in which the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the state where the arbitration will be conducted. **If, however, the parties fail to agree on an arbitrator within 30 days after the initiation of arbitration, or at the request of either party, the dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ("JAMS Rules").** The JAMS Rules may be accessed at: https://www.jamsadr.com/rules-employment-arbitration/. Alternatively, an Employee may obtain a copy of the JAMS Rules from Human Resources. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

ER_715–48. The JAMS Rules in turn provide:

> If no Arbitrator has yet been appointed, at the request of a Party and in the absence of Party agreement, JAMS may determine the location of the Hearing, subject to Arbitrator review…. Disputes concerning the appointment of the Arbitrator shall be resolved by JAMS….The Arbitrator, in order to hear a third-party witness, or for the convenience of the Parties or the witnesses, may conduct the Hearing at any location. [24]

Thus, to the extent that, after being compelled to arbitration within the Northern District of California, either party believes the matter should be arbitrated by JAMS in a different location or by an arbitrator with certain qualifications, it could

---

[24]    *JAMS Employment Arbitration Rules & Procedures*, R. 6(b), 11(c), 19(c), available at https://www.jamsadr.com/rules-employment-arbitration/english.

32

make these arguments to JAMS or to the appointed arbitrator. Indeed, this is precisely why parties adopt specific, reputable, and comprehensive arbitration rules administered by trusted and established arbitration providers like JAMS and AAA: to provide for fair and mutually agreeable pre-dispute mechanisms for navigating uncharted or unanticipated procedural complexities. Indeed, this Court recently explained why, when a party's arbitration agreement incorporates JAMS Rules and delegates threshold issues (like arbitral locations and the appointment of arbitrators), the parties must honor their pre-dispute agreement to abide by JAMS' initial determinations:

> In any case, it is inescapable that JAMS would have to make certain procedural decisions prior to the selection of an arbitrator, not least because the Terms incorporated the JAMS Rules. Rule 1(c) states: "The authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ('NAC') ...." Rule 6 outlines several pre-arbitration administrative decisions that JAMS can make. Rule 11(a) conditions an arbitrator's authority to resolve disputes about the JAMS Rules on the arbitrator's being appointed, implying that at least some JAMS rules can be applied and effectuated prior to such appointment….

> [N]obody here is denying that Starz's Terms contain a valid arbitration agreement or that the agreement covers the dispute at issue….[T]he JAMS Rules are what she agreed to and she can seek recourse within those Rules. We cannot be made to do the bidding of every unhappy arbitration claimant, and especially not one who is already in arbitration. Jones's invocation of the courts' responsibility under the FAA rings hollow where the circumstances simply present no dispute about arbitrability.

*Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1184–85 (9th Cir. 2025).

33

Accordingly, once the parties are able to proceed with their arbitrations (following Twitter's payment of its fees), Twitter is more than welcome to take up the issue of the hearings' location and appointment of arbitrators in accordance with the JAMS procedures. What Twitter may *not* do, however, is block Petitioners' efforts to arbitrate under the rules and procedures to which the parties agreed. And it cannot use the excuse of this Court proceeding to attempt an impermissible interlocutory appeal of rulings in arbitration with which it disagrees.[25]

---

[25]  *See, e.g., Jones*, 129 F.4th at 1184–85; *Aerojet-Gen. Corp. v. Am. Arb. Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973) (emphasis in original) (citation omitted) ("Our first question is whether judicial scrutiny of arbitration proceedings is *ever* appropriate prior to the rendition of a final arbitration award….It is apparent, therefore, that judicial review prior to the rendition of a final arbitration award should be indulged, if at all, only in the most extreme cases. The basic purpose of arbitration is the speedy disposition of disputes without the expense and delay of extended court proceedings. To permit what is in effect an appeal of an interlocutory ruling of the arbitrator would frustrate this purpose."); *In re Sussex*, 781 F.3d 1065, 1072–75 (9th Cir. 2015) (collecting cases) (quoting *id.* at 251) (noting that "[w]hile refraining from issuing a blanket rule precluding intervention in an ongoing arbitration, we came quite close in *Aerojet–General,* and never subsequently approved of such an intervention," that "[t]he majority of our sister circuits expressly preclude any mid-arbitration intervention," that "even assuming that a mid-arbitration intervention could be permissible under some extreme circumstances, cost and delay alone do not constitute the sort of 'severe irreparable injury' or 'manifest injustice' that could justify such a step," and that the case was "'emphatically not' such an extreme case, if one exists, that could cause us to diverge from our practice, consistent with other circuits, of declining to intervene in an ongoing arbitration"); *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 653 (9th Cir. 1991) (quoting *Thompson v. Zavin,* 607 F.Supp. 780, 783 (C.D.Cal.1984)) (emphasis in original) (alterations omitted) ("Once it is determined that the parties are obligated to submit the subject matter of a dispute to arbitration[,] '*procedural*'

34

Indeed, in arbitration, it might very well be determined that Twitter's arbitration agreement's term requiring that "[t]he location of the arbitration proceeding shall be no more than 45 miles from **the place where the Employee reported to work for the Company**" means that remote workers (like Petitioners) who physically resided outside California must nevertheless have their claims arbitrated in California — within 45 miles of Twitter's then-headquarters — which was located within the Northern District of California. ER_715–48 (emphasis added).[26] But, in any event, here, this issue regarding where the arbitration should

questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator. Reservation of '*procedural*' issues for the courts would thus not only create the difficult task of separating related issues, but would also produce frequent duplication of effort."); *Assofi v. Basile*, 2025 WL 1090150, at *1 (C.D. Cal. Mar. 28, 2025) (Wu, J., in chambers) ("These parties agreed to go to arbitration. That is where they are. There is no hybrid arbitration-court proceeding, and this Court does not sit to reconsider, or hear appeals from, interlocutory decisions made in that arbitration."); *accord Idea Nuova, Inc. v. GM Licensing Grp., Inc.*, 2010 WL 10041842, at *3–5 (S.D.N.Y. Oct. 18, 2010) ("The…prohibition on interlocutory review of interim rulings by arbitrators similarly applies to threshold determinations by the AAA. Even if one assumes there is a distinction between an interlocutory decision of the AAA and an interim ruling of an arbitrator, it is a technical distinction without a difference. Both are similarly intermediary steps in deciding all claims submitted to arbitration.").

[26]     Indeed, courts addressing this issue have agreed with Twitter that its home district of the Northern District of California was the correct venue for an employee dispute to be litigated:

Defendant [Twitter] is a Delaware corporation, with its principal place of business / headquarters at 1355 Market Street, Suite 900, San Francisco, California 94103. Defendant operates a global Internet platform for public self-expression and conversation that is free-of-

35

charge and open for virtually anyone to use. Defendant's product design, development, implementation, and financial activities are centered in San Francisco. Of its 3,490 employees, 1,706 work out of the San Francisco headquarters, including 636 of its 938 software engineers. The San Francisco headquarters are also home to Defendant's key business teams, including non-technical personnel supporting product management, marketing, finance, and sales. VoIP-Pal's infringement allegations relate to what it refers to as Defendant's "messaging platform" (or the "Twitter System"). The accused technology is largely designed and built in San Francisco, and the bulk, if not all, of any relevant technical documentation, manuals, and product specifications, as well as all financial data relevant to revenue derived from Defendant's products, are located in San Francisco. Defendant does not own or lease any offices, buildings, or other facilities in Nevada, and does not directly or indirectly store any data in Nevada. It has no Nevada telephone number or local address listed on its website or in any directory. Defendant is a software company that has no physical product inventory, and its advertising and marketing are primarily conducted online. It does not store inventory or product literature in Nevada.

Defendant has a single employee, a software engineer, that lives in Nevada. Given the nature of his work—which can be performed from anywhere in the world—this particular engineer chose to live in Nevada for personal reasons and works from home. He reports to a manager in San Francisco and uses San Francisco support staff. Defendant does not own his home or pay his rent. The decision to live in Nevada was the employee's alone; Defendant does not condition his employment on his location. He is free to move out of Nevada if he desires. If he were to leave Defendant's company or Nevada, Defendant would have no plans to hire another Nevada-based employee….

The Federal Circuit defines a "place of business" as a "physical, geographical location in the district from which the business of the defendant is carried out." In re Cray, 871 F.3d at 1362. Where a defendant stores its literature, documents, and products may be considered a place of business. The Court finds that the undisputed facts show that Defendant does not have a physical location in this

36

physically be held is one to be decided in arbitration, not one for the courts to address. Because the parties have delegated to arbitration "any dispute arising out of or related to Employee's employment," "disputes regarding the employment relationship, [or] terms and conditions of employment," "without limitation, disputes arising out of or relating to interpretation or application of th[e arbitration] Agreement," and "disputes that otherwise would be resolved in a court of law or before a forum other than arbitration," this Court need not, and should not, itself determine the meaning of the phrase "the place where the Employee reported to work for the Company." ER_715–48. Instead, given it would not be entirely unreasonable for JAMS or an arbitrator to conclude that this "place" for remote workers like Petitioners was Twitter's headquarters,[27] the Court should simply

---

district where its business is carried out. Nor does Defendant store any of its data on servers located in Nevada. The fact that one software engineer resides in this district is insufficient to establish such location. **The employee works remotely and reports to a team in San Francisco.** This employee is not required to live in Nevada. Plaintiff does not introduce any fact that the employee's location is available to the public or otherwise held out as a location for the operations of Defendant's business.

*VoIP-Pal.com, Inc. v. Twitter, Inc.*, 2018 WL 3543031, at *2–3 (D. Nev. July 23, 2018) (emphasis added).

[27] "Moreover, respondents cannot overcome the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it. Respondents drafted an ambiguous document, and they cannot now claim the benefit of the doubt." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62–63 (1995) (citations omitted). Because Twitter

compel Twitter to participate in JAMS arbitration within the Northern District of California, including by paying the fees apportioned to Twitter that are necessary for such proceedings to commence, and allow the parties to address any disputes over the ultimate location or appointment of arbitrators within the JAMS processes they agreed to in their arbitration agreements.

Finally, if this Court ultimately does itself reach the (delegated) question of the meaning of "the place where the Employee reported to work for the Company," *and* determines that this term (or others, like those purporting to impose requirements upon local arbitrators) are implicated by this appeal, *and* determines that the agreement's provision that "If, however, the parties fail to agree on an arbitrator within 30 days after the initiation of arbitration, or at the request of either party, the dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ('JAMS Rules')" is somehow *not* implicated, it should nevertheless compel Twitter to arbitration within the Northern District of California and sever the offending provisions, which are ancillary to the overarching arbitration clause and incorporation of JAMS rules.

---

drafted the arbitration agreement, any ambiguities in this phrase must be construed against its interests.

38

The Supreme Court has explained:

> The FAA … places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms. Like other contracts, however, they may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability….[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.'"

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010) (citations, quotations, and alterations omitted). This doctrine stems from § 2 of the FAA, which provides that written provisions in an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Consistent with the statute, where provisions of arbitration agreements are not enforceable pursuant to 9 U.S.C. § 2, courts routinely sever those provisions and compel parties to arbitrate under the remaining agreement. *See, e.g., Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1273-74 (9th Cir. 2017) (severing one-sided and illegal arbitration provisions); *Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 432-33 (N.D. Cal 2018) (compelling arbitration after the court severed three unconscionable provisions from the arbitration agreement); *Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 632 (N.D. Cal. 2018) (compelling arbitration after severing unenforceable provisions).

39

As courts have routinely recognized, impossibility is a generally applicable contract defense within § 2's ambit.[28] Likewise, in each of the states in which Twitter claims Petitioners must separately bring their claims, impossibility is a generally applicable contractual defense.[29] Severance is appropriate if the unenforceable provision is "'collateral to the main purpose of the contract,' which is to require arbitration of disputes." *Poublon*, 846 F.3d at 1273 (*quoting Marathon Entm't v. Blasi*, 174 P.3d 741, 743 (Cal. Sup. Ct. 2008)). This is especially true

---

[28] *See, e.g.*, *DeMidio v. REV Recreation Grp., Inc.*, 2018 WL 1744958, at *7 (N.D. Ind. Apr. 10, 2018) (quoting *Anonymous, M.D. v. Hendricks*, 994 N.E.2d 324, 329 (Ind. Ct. App. 2013)) (emphasis added) ("Like any other contract, arbitration agreements may be invalidated by generally applicable contract defenses such as fraud, duress, **impossibility**, or unconscionability."); *Schultz for Schultz v. GGNSC St. Paul Lake Ridge LLC*, 310 F. Supp. 3d 985, 988 (D. Minn. 2018) (emphasis added) (citation omitted) ("Plaintiff alleges in his initial Complaint that the Arbitration Agreement 'is void and unenforceable on the grounds of **impossibility**, illegality, contravention of public policy, fraud in the inducement based on material misrepresentation and omission, and unconscionability based on material misrepresentation and omission.' These generally applicable contract defenses may be applied to invalidate arbitration agreements, *see Doctor's Assocs., Inc.*, 517 U.S. at 687[.]").

[29] *See, e.g.*, *Freedman v. Hason*, 65 N.Y.S.3d 59, 62 (N.Y. App. Div. 2d Dept. 2017) (New York — Petitioners Ma and Treitler); *Matheny v. Gila Cnty.*, 710 P.2d 469, 469–71 (Ariz. App. 2d Div. 1985) (Arizona — Petitioner Amlani); *Ferguson v. City of Orofino*, 953 P.2d 630, 633 (Idaho App. 1998) (Idaho — Petitioner Willis); *Chicago, M., St. P. & P. R. Co. v. Chicago & N. W. Transp. Co.*, 263 N.W.2d 189, 192–93 (Wis. 1978) (Wisconsin — Petitioner Olson); *SVAP III Poway Crossings, LLC v. Fitness Intern., LLC*, 303 Cal. Rptr. 3d 863, 872 (Cal. App. 4th Dist. 2023), *review denied* (Apr. 26, 2023) (California — Petitioner Crowley).

where, as here,[30] the parties expressly agree that any unenforceable provision should be severed. *Poublon*, 846 F.3d at 1274.

Thus, to the extent Twitter's arbitration agreement is read to require that an arbitrator be selected from a state in which there are no JAMS arbitrators, that provision simply cannot be met for all employees and therefore is unenforceable for such employees. Because the requirement is collateral to the main purpose of the agreement — namely, to arbitrate the dispute — it should be severed to allow enforcement of the remaining arbitration provisions.[31]

## CONCLUSION

For the foregoing reasons, this Court should vacate the district court's denial of Petitioners' motion to compel arbitration and remand with instructions to compel Twitter to arbitrate in accordance with the agreement it entered (as interpreted by the arbitration service that it chose to use).

---

[30]    ER_715–48 ("Except as stated … in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable.").

[31]    Twitter clearly recognizes the collateral nature of the requirement, as it already agreed to waive it in some instances (for instance, in allowing New York arbitrators to be appointed to cases for employees who worked in New Jersey). ER_553.

41

Dated:      July 25, 2025                    Respectfully submitted,

FABIEN HO CHING MA, *et al.*,
Petitioners-Appellants,

By their attorney,

*/s/* Shannon Liss-Riordan

Shannon Liss-Riordan (SBN 310719)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

*Attorney for Petitioners-Appellants*

42

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____ 25-1536, 25-1695 _____

I am the attorney or self-represented party.

**This brief contains** _____11,233_____ **words,** including _____0_____ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[X] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __*s/ Shannon Liss-Riordan*_____ **Date** __July 25, 2025____
*(use "s/[typed name]" to sign electronically-filed documents)*

43

25-1536, 25-1695

**IN THE**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

FABIEN HO CHING MA, LAILA AMLANI, JONATHAN WILLIS, MELISSA OLSON, SASHA SOLOMON, RYAN CROWLEY, GRAE KINDEL, SARAH ROSEN, and ADAM TREITLER,

*Petitioners-Appellants / Cross-Appellees*

---v.---

TWITTER, INC. and X CORP.,

*Respondents- Appellees / Cross-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA.

_____

**ADDENDUM OF PERTINENT LEGAL PROVISIONS**

_____

Shannon Liss-Riordan (SBN 310719)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800

*Attorney for Petitioners-Appellants*

44

45

# <u>TABLE OF CONTENTS</u>

**Statutes**

9 U.S.C. § 4 .......................................................................................... 46

<u>9 U.S.C. § 4:</u>

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

46